**GENERAL CABLE COMPANY, Petitioner,**

v.

**The INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO and Rita J. Turzanski, Respondents.**

**No. 93CA1318.**

Colorado Court of Appeals, Div. III.

June 16, 1994.

Lavinder, Jolliffe & Chambers, P.C., David L. Lavinder and Julia G. McVey, Denver, for petitioner.

No appearance for respondent Indus. Claim Appeals Office.

Hult, Garlin & Driscoll, David J. Driscoll, and Thornburn, Sakol & Throne, Barre M. Sakol, Boulder, for respondent Rita J. Turzanski.

Opinion by Judge JONES.

In this workers' compensation case, General Cable Company (employer) contests a final order of the Industrial Claim Appeals Panel (Panel) determining benefits for Rita J. Turzanski (claimant). We affirm.

This case addresses the question whether an emotional stress disability arising out of a sexual relationship between two co-workers may be compensable under the Workers' Compensation Act.

The ALJ found that the claimant and her supervisor engaged in a sexual relationship beginning in May 1988. The relationship was initially consensual. Claimant's supervisor initiated the relationship when he proposed that they leave work and engage in sex. After they had done so, he warned the claimant that if anyone discovered what they had done she would lose her job.

The relationship continued until April 1991. When the claimant sought to end the relationship, her supervisor used psychological pressure to keep her in the relationship by threatening her with loss of her job or overtime work.

In May 1991, claimant's stress reached the point that she had decided to kill either her supervisor or herself. She checked herself into a psychiatric hospital and was treated on an in-patient basis until July 1, 1991. At the time of hearing, in July 1992, the claimant remained under medical care for her emotional state and had not reached maximum medical improvement.

The ALJ concluded that, under these circumstances, the conduct of claimant's supervisor bore an "inherent connection with the employment" because her supervisor exploited his position to tie the relationship to her employment. The ALJ determined that the claimant's stress injury arose out of and in the course of her employment, and he awarded full benefits for temporary total disability and for the claimant's psychiatric care. On review, the Panel affirmed.

The employer advances two contentions as to why the claim is not compensable. First, it argues that the Panel inadequately considered claimant's pre-existing psychiatrical, psychological, and emotional problems which, it claims, would rebut the conclusion that her stress injury was work-related. Secondly, it argues that the claimant's stress did not arise out of her employment because: (1) the stress was based on her misperception of her supervisor's power to influence her job and overtime, and (2) the claimant and her supervisor were engaged in a private consensual relationship. We reject these arguments.

I.

Initially, we note that, although the employer does not directly challenge the ALJ's findings of fact, much of its argument is premised on evidence that conflicts with the ALJ's findings. The employer also argues that the ALJ should have entered more detailed findings in resolving the conflicting evidence. These arguments are without merit.

An appellate court does not decide the facts and may not substitute its judgment for that of the fact finder. *Martinez v. Regional Transportation District*, 832 P.2d 1060 (Colo.App.1992). Factual findings supported by substantial evidence, as present here, are binding on review. *Martinez v. Regional Transportation District, supra.* The ALJ is required to make specific find-

ings only as to the evidence found persuasive and determinative. *Riddle v. Ampex Corp.*, 839 P.2d 489 (Colo.App.1992). There is no obligation to address every issue raised or that evidence which the ALJ considers to be unpersuasive. *Crandall v. Watson–Wilson Transportation System, Inc.*, 171 Colo. 329, 467 P.2d 48 (1970).

We conclude that the ALJ's findings are amply supported by substantial evidence. As in *Riddle v. Ampex Corp., supra,* the ALJ made detailed factual findings regarding the facts and circumstances pertinent to the claimant's alleged stressors, the conflicting inferences on causation, and that the injury arose out of and in the course of her employment. Thus, we are satisfied that the ALJ considered all the evidence presented and more than adequately resolved the conflicting evidence.

## II.

The employer also contends that the ALJ erred in determining that the claim arose primarily from claimant's occupation. It further argues that the ALJ failed to address the impact on claimant's condition of her non-occupational stressors, including her history of financial problems, marital problems, and childhood abuse. We disagree.

■ If a claim for compensation is based on mental or emotional stress, such compensation may obtain only in those cases in which, along with the presence of other required conditions:

> The emotional or mental stress which is the basis of the claim [has] arisen primarily from the claimant's occupation and place of employment.

Colo.Sess.Laws 1990, ch. 62, § 8–41–301(2)(b) at 479–480.

In *Young v. Industrial Claim Appeals Office,* 860 P.2d 591 (Colo.App.1993), this court defined the word "primarily," as used in § 8–41–301(2)(b), by referring to the statute now codified as § 8–41–302(1), C.R.S. (1993 Cum. Supp.). Section 8–41–302(1) provides that claims based on emotional stress are not compensable unless competent evidence shows that the stress "is proximately caused solely by hazards to which the worker would

not have been equally exposed outside the employment."

To harmonize the two provisions, the *Young* court held that:

> Implicit in the provision that used the term 'solely' is a framework anticipating three types of mental stress conditions. The statute contemplates that stress may be caused only by personal factors, or only by industrial factors, or by a combination of the two. In our view, for a mental condition to be compensable under the Workers' Compensation Act, the hazards causing the stress must be more attributable to the workplace than to a claimant's personal problems.

*Young v. Industrial Claim Appeals Office, supra,* 860 P.2d at 593. The court then concluded that compensability depends on whether the stressor causing the injury arose primarily in the workplace.

■ Thus, the fact that a claimant suffers from pre-existing emotional problems does not preclude a determination that the stress-related disability resulted primarily from the employment. *See Peterson v. ENT Federal Credit Union,* 827 P.2d 621 (Colo.App.1992).

In this case, the ALJ found that the supervisor advised the claimant that, if anyone discovered what they had done, she would lose her job. When the claimant attempted to end the relationship, her supervisor used psychological or emotional pressure on her with threats of the loss of her job or loss of overtime work. Furthermore, the ALJ found that the claimant had a stress-related disorder precipitated by the relationship with her supervisor, regardless of the precise diagnosis.

The ALJ also found that the claimant had various pre-existing problems relating to childhood abuse, financial difficulties, and marital problems. He concluded, however, that it was the relationship with her supervisor that caused the claimant's psychological disability in May 1991.

■ Here, then, contrary to the employer's argument, the ALJ did consider the claimant's psychological history, but he determined that her relationship with her su-

pervisor was the proximate cause of her stress disability. In reaching this conclusion, the ALJ pointed out that the claimant's pre-existing problems had not disabled her prior to the relationship with her supervisor. His factual findings are well-grounded in the evidence and support his conclusion that the disabling stress was caused by the relationship with her supervisor.

■ We agree with the Panel that, although the relationship between the claimant and her supervisor may have been consensual initially, the stress arose out of the employment because her supervisor used his position to coerce the claimant to remain in the relationship.

### III.

Employer next contends that the claimant's stress did not arise out of and in the course of her employment, as required by § 8–41–301(1)(c), C.R.S. (1993 Cum.Supp.), because the stress was based on her misperception of her supervisor's power over her job. It further asserts that the ALJ failed to consider the personal non-occupational aspects of the claimant's relationship with her supervisor. We disagree.

An activity "arises out of and in the course of" employment when:

> it is sufficiently interrelated to the conditions and circumstances under which the employee usually performs his job functions that the activity may reasonably be characterized as an incident of employment, even though the activity itself is not a strict obligation of employment and does not confer a special benefit on the employer.

*City of Boulder v. Streeb,* 706 P.2d 786, 791 (Colo.1985).

■ The "in the course of employment" requirement is satisfied by showing that an injury occurred within the time and place limits of the employment relation and during an activity that has some connection with the employee's job-related functions. The "arising out of" requirement is satisfied when the origins of the injury are work-related and the injury is sufficiently related to the work to be considered part of the employee's service to

the employer. *Popovich v. Irlando,* 811 P.2d 379, 383 (Colo.1991).

■ Intentional acts committed against an employee by a co-employee which are alleged to have contributed to the compensable injury may be divided into three categories: those inherently connected to the employment; those inherently private; and those neither inherently work-related nor inherently private which are designated neutral. *In Re Question Submitted by U.S. Court of Appeals,* 759 P.2d 17 (Colo.1988).

■ Here, the ALJ determined that the claimant's injury was inherently work-related because her supervisor was in a position to have a measurable impact on her work and overtime. These findings are supported by substantial evidence and, therefore, must be upheld on review. *Cf. In re Question, supra.* Furthermore, because the claimant's stress resulted from her supervisor's authority over her job and his exploitation of her perception of that authority, we reject the argument that her stress was caused solely by a "misperception" of her supervisor's authority or non-occupational aspects of the relationship.

■ In reaching this conclusion, we decline to adopt the "objective standard," *e.g.,* that actual working conditions could have caused similar emotional injury in an individual who was not significantly predisposed to such injury. *See Sturgis v. D.C. Department of Employment Services,* 629 A.2d 547 (D.C.Ct.App.1993). The burden imposed by the statutory framework for compensability of a stress injury, § 8–41–301(2), as discussed in *Young v. Industrial Claim Appeals Office, supra,* and the criteria developed in that case and in *Popovich v. Irlando, supra,* and *In re Question, supra,* adequately protect an employer from any false claims of stress injuries.

### IV.

■ Asserting that the employer has based its legal arguments upon a misconception of the facts, the claimant contends that this is a frivolous appeal and that claimant is entitled to sanctions under C.A.R. 38, § 8–43–307(4), C.R.S. (1993 Cum.Supp.), and

§ 13–17–102, C.R.S. (1987 Repl.Vol. 6A). However, because the employer has argued the adoption of a new rule of law applicable to the unique factual situation of this case, we decline to award fees. *See Western United Realty, Inc. v. Isaacs,* 679 P.2d 1063 (Colo. 1984).

The order is affirmed.

PLANK and KAPELKE, JJ., concur.